IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Hannah Parker, <br>                 Plaintiff, <br> vs. <br> Magna Innertech-Spartanburg, <br>                 Defendant. | Civil Action No. 6:09-773-JMC-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 45) and two motions to strike (docs. 53, 58). In her complaint, the plaintiff alleged causes of action against her former employer under Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981 ("Section 1981"); the Fair Labor Standards Act ("FLSA"); the Age Discrimination in Employment Act ("ADEA"); and the Americans With Disabilities Act ("ADA"). On December 29, 2009, the Honorable Henry F. Floyd, United States District Judge, dismissed the plaintiff's ADA, ADEA, FLSA, and racially hostile work environment, sex discrimination, and retaliation claims under Title VII.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff, a black female, began her employment with the defendant on October 15, 2007, as the Human Resources Manager at the Spartanburg facility (pl. dep.

1[1] at 12-13, 69). Sandra Levy, a black female, hired the plaintiff (pl. dep. 1 at 78; Levy decl. ¶¶ 2, 6). The plaintiff was chosen by Ms. Levy to replace the former Human Resources Manager, Kevin Lawson, who is white (Levy decl. ¶¶ 6, 8, 9). Mr. Lawson was terminated from employment with the defendant because of poor performance (Levy decl. ¶ 6).

The plaintiff reported to Ms. Levy during her employment with the defendant (pl. dep. 1 at 78; Levy decl. ¶ 7). The plaintiff evaluated her own performance in early 2008 as "exceptional" (pl. dep. 2 at 83, 85-98, ex. 4). The plaintiff gave the self-evaluation to Ms. Levy and select management individuals at the Spartanburg facility: Heinz Krabbenhoeft, former General Manager; Gary Justice, former Interim General Manager; Ken Adams, former Interim General Manager; and Steve Dawdy, Assistant General Manager (pl. dep. 2 at 87). At the plaintiff's request, these individuals commented on the plaintiff's subjective opinions and gave their own assessment of her performance, which included criticism and areas for improvement (pl. dep. 2 at 87-88, 100-122, ex. 5-10).[2] For example, Mr. Justice noted that the plaintiff needed to be a "real people person" and "improve people skills" (pl. dep. 2 at 104, ex. 5). Mr. Dawdy rated the plaintiff's performance as below satisfactory stating she "does not understand role as a support function - does not support entire business. Delegates all tasks" (pl. dep. 2 at 117, ex. 9). Mr. Dawdy also noted that the plaintiff missed conference calls and meetings and had slept in meetings (pl. dep. 2 at 120,

---

[1]The plaintiff gave deposition testimony relevant to her claims in this matter while being deposed in the case of *Michael Williams v. Intier Automotive Interiors of America, Inc., d/b/a Magna*, C. A. No: 7:09-cv-01144-RBH-WMC. The plaintiff was named as a fact and expert witness by Innertech and Mr. Williams, and was deposed in that matter on March 9, 2010. The plaintiff's deposition testimony in that case will be referenced as "pl. dep. 1 at ___." References to the plaintiff's testimony at her deposition in the instant case will be referenced as "pl. dep. 2 at ___."

[2]Ms. Levy was responsible for reviewing and evaluating the plaintiff's performance for purposes of raises, bonuses, promotions, or improvement (Levy decl. ¶¶ 5, 7). The plaintiff claims she does not know who she reported to or who was responsible for evaluating her performance (pl. dep. 2 at 87). The other individuals were not responsible for evaluating the plaintiff but did so at the plaintiff's request in conjunction with her attempts to develop a new performance evaluation system (pl. dep. 2 at 87-88, 100-122; Levy decl. ¶¶ 5, 7).

2

ex. 10). The ratings of the plaintiff by Mr. Krabbenhoeft, Mr. Justice, Mr. Adams, and Mr. Dawdy were dramatically lower than the plaintiff's self-ratings (pl. dep. 2, ex. 5-10).

According to Ms. Levy, the plaintiff's employment was terminated because she failed to perform adequately in her position (Levy decl. ¶ 8). Ms. Levy cited the plaintiff's performance problems as "employee relations, including her interpersonal skills, an inability to be hands-on, and delegating too much work to her assistant; basic human resources competencies; and being unreliable, including falling asleep in meetings, and not arriving at work on time" (Levy decl. ¶ 8). The plaintiff's last day at Innertech was March 3, 2008 (pl. dep. 1 at 69). Ms. Levy testified that she made the decision to terminate the plaintiff's employment (Levy decl. ¶ 8). The plaintiff testified that she knows nothing about the defendant's decision to terminate her employment:

> Q. Now, you were terminated from Innertech, right?
>
> A. Yes.
>
> Q. And do you know why you were terminated?
>
> A. No.
>
> Q. Do you know who made the decision to terminate your employment?
>
> A. No.
>
> Q. Do you know if there are any meetings where the decision to terminate your employment was discussed?
>
> A. No.
>
> Q. Do you know what factors were considered in the decision to terminate your employment?
>
> A. No.
>
> Q. And you don't know what weight those factors were given, do you?
>
> A. No.

(Pl. dep. 1 at 93-94). The plaintiff further testified that she does not know if the defendant discriminates against any employees because of race (pl. dep. 1 at 96).

The plaintiff was replaced with a white/Caucasian female internal candidate, Nicole Tomasek. Ms. Tomasek was qualified for the position (Tomasek dep. at 8-11; Levy decl. ¶ 9). Ms. Tomasek had been employed in Human Resources at another Magna facility and has a college degree. Ms. Tomasek's first Human Resources Manager position was at Innertech Spartanburg (Tomasek dep. at 8-11). Further, Ms. Tomasek is four classes away from obtaining her Master's degree in Human Resources Management (Tomasek dep. at 9-10).

## **MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT**

In her affidavit submitted in opposition to the motion for summary judgment, the plaintiff testified, "All final decisions to hire/transfer/promote/terminate employees at Innertech were made by Steve Dawdy, Ken Adams and Gary Justice" (pl. aff. ¶ 2). She further testified, "The Innertech 'REPORTS TO' manager delivered the 'Notice of Termination' or Hire Letter per the direction of Steve Dawdy, Ken Adams and Gary Justice" (pl. aff. ¶ 3). The plaintiff also testified in her affidavit, "The defense argues that Sandra Levy made the final decision; however, no facts/reliable document/first-hand evidence is presented under Sandra Levy's signature by the defense to justify termination. The documents presented that point to 'release' are allegedly under the signature of Steve Dawdy" (pl. aff. ¶ 5).

In its motion to strike (doc. 53), the defendant argues that these statements contradict the plaintiff's prior deposition testimony in which she testified as follows:

> Q. Do you know who made the decision to terminate your employment?
>
> A. No.

4

(Parker dep. 1 at 93-94).

> Q. Did you interview with Ms. Levy?
>
> A. I met her, yes.
>
> Q. Okay. Do you know if she was responsible for the decision to hire you in any way?
>
> A. I don't know.

(Parker dep. 1 at 78). Ms. Levy testified in her sworn declaration that she made the final decision to terminate the plaintiff's employment (Levy decl. ¶ 8).

> The plaintiff further testified in her affidavit:
>
> I reported directly to the General Manager (a TITLE/position that switched from Heinz Krabbenhoeft to Gary Justice day-to-day). Neither Ken Therrien, nor Steve Dawdy was responsible for evaluating my performance. They were co-workers who also reported to the General Manager – just as Michael Williams (Quality Manager); the Controller, Materials Control Manager, et al.

(Pl. aff. ¶ 5). In her deposition, however, when asked about her reasoning for giving her self-evaluation to Mr. Krabbenhoeft, Ms. Levy, Mr. Dawdy, Mr. Adams, and Mr. Justice, the plaintiff testified she did not know who was responsible for evaluating her performance:

> Q. Which of these individuals did you actually report to?
>
> A. I don't know.
>
> Q. In your review, were they all responsible for evaluating your performance?
>
> A. I don't know.

(Pl. dep. 2 at 87).

Also in her affidavit, the plaintiff testified, "During the Defendant's deposition of me in this matter, the [sic] presented Innertech documents allegedly marked up by Ken Therrien, Steve Dawdy, Heinz Krabbenhoeft, and Gary Justice are not consistent/reliable for the following reasons: . . . " (pl. aff. ¶ 5). She further stated in her affidavit,

5

"Performance review documents presented by the Company in this case do not contain signatures; have questionable/duplicate handwritten notes/marks; and contain inconsistent pagination" (pl. aff. ¶ 5). However, the plaintiff concedes in paragraph 9 of her affidavit that "Justice, Adams and Dawdy assessed my self-evaluation…" She admits she gave the self-evaluation she prepared to Ms. Levy, Mr. Krabbenhoeft, Mr. Justice, Mr. Adams, and Mr. Dawdy for the express purpose, at her request, for them to comment on her evaluation and give their own assessment of her performance (pl. dep. dep. 2 at 85-88; 100-122). The plaintiff also conceded in her deposition that she had no reason to dispute that the documents in question were completed by Mr. Justice (pl. dep. 2 at 101), Mr. Krabbenhoeft (pl. dep. 2 at 107-109), Mr. Dawdy (pl. dep. 2 at 119), and signed by Mr. Justice (pl. dep. 2 at 112).

This court agrees that the above statements directly conflict with the plaintiff's earlier sworn testimony in her deposition and should be stricken. If an affidavit conflicts with earlier sworn testimony, it must "be disregarded as a sham issue of fact." *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990). "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984).

Also in her affidavit, the plaintiff testified, "I specifically deny Sandra Levy is an African-American female. On Thursday September 20, 2007, Sandra Levy stated she was born in Kingston, Jamaica, West Indies; and is a Jamaican immigrant to Canada" (pl. aff. ¶ 7). Ms. Levy testified in her sworn declaration as follows: "I am a black female. I was born in Jamaica and am a Canadian citizen. I identify my race as black. In Canada the term 'African-American' is not used, but 'black' is used as an equivalent term for persons of that race" (Levy decl. ¶ 2). The plaintiff argues in her opposition to the motion to strike, "Levy's nationality is relevant in that she is not African-American as is Parker. Although

6

Levy has sworn, under oath, that she is black, she is not African American" (pl. resp. m. to strike at 8-9). Oddly, in her deposition testimony, the plaintiff insisted that she herself is not African-American, but black (pl. dep. 1 at 12-13), while in her complaint, the plaintiff identifies herself as "an African-American female" (compl. ¶ 5). The plaintiff's argument is nonsensical. In her complaint, the plaintiff has alleged *racial* discrimination. Ms. Levy's nationality is irrelevant. Clearly, Ms. Levy and the plaintiff have identified themselves as members of the same race, whether termed "black" or "African-American." As argued by the defendant, it appears that the plaintiff has intentionally attempted to confuse identification of race and nationality, trying to minimize the fact that she was both hired and terminated from her employment by a person of her own race. Based upon the foregoing, paragraph 7 should also be stricken.

In opposing the motion to strike, the plaintiff's counsel submitted what is essentially a copy of the defendant's motion to strike, using the identical case and record citations. Throughout the response, the plaintiff repeatedly makes such explanations as "but later in her Declaration/Affidavit clarifies her prior admissible deposition response to an unexpected deposition question" (*see* pl. resp. m. to strike 4-11). On the one hand, such questions regarding who hired, fired, and supervised her should *not* have been unexpected. Further, even if the questions were unexpected, the plaintiff does not cite any authority for the proposition that a deponent is allowed to submit an affidavit contradicting earlier sworn testimony where the deposition question was "unexpected."

Based upon the foregoing, the defendant's motion to strike paragraphs 2, 3, 7, and the above-cited portions of paragraph 5 of the plaintiff's affidavit should be granted. The defendant also moved to strike other portions of the plaintiff's affidavit that are not pertinent to the court's analysis of the plaintiff's race claim. Accordingly, to the extent the defendant moved to strike portions of the plaintiff's affidavit not discussed herein, such motion should be denied as moot.

## MOTION TO STRIKE PLAINTIFF'S SUR-REPLY

The defendant has also moved to strike the plaintiff's sur-reply opposing the defendant's motion summary judgment (doc. 58). The defendant's motion for summary judgment was filed on June 1, 2010, and the plaintiff's opposition was filed on June 25, 2010. The defendant filed its reply on July 6, 2010, and the plaintiff filed a sur-reply on July 20, 2010. The defendant notes that neither the Federal Rules of Civil Procedure nor the Local Rules permit a sur-reply without leave court. Further, even if the sur-reply was considered a reply under Local Civil Rule 7.07 DSC, it was not timely filed. The plaintiff filed no opposition to the defendant's motion to strike.

The undersigned has considered the plaintiff's sur-reply in preparing the report and recommendation. Should the District Court adopt this court's report and recommendation, the defendant's motion to strike the plaintiff's sur-reply (doc. 58) should be denied as moot. Alternatively, it is recommended that the motion to strike be granted as the sur-reply is untimely.

## MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff's remaining claim is that the defendant terminated her employment because of her race in violation of Title VII. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). The plaintiff claims she has direct evidence

9

of discrimination based on comments made by management that she considered to be racially biased. Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995), *abrogated on other grounds by*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

The plaintiff contends that Gary Justice and Ken Adams made what she considered to be racially-derogatory remarks when discussing a potential reduction-in-force. The plaintiff claims Mr. Justice referred to "that black kid," an "oriental," and "nappy hair" when identifying individuals who worked in the facility (pl. dep. 1 at 81-82; pl. dep. 2 at 132). The plaintiff further claims that Mr. Adams referred to an individual as having "crazy hair"; the same individual that Mr. Justice referred to as having "nappy hair" (pl. dep. 1 at 81-82; pl. dep. 2 at 132-133). The plaintiff admits these comments were made only in the context of describing the persons in order to identify them (pl. dep. 2 at 127-28). The plaintiff cannot identify about whom the comments were made or when the comments were made (pl. dep. 1 at 81-82). These comments were not made in the context of the plaintiff's termination (pl. dep. 2 at 131). Furthermore, Mr. Justice and Mr. Adams were not the decisionmakers in the termination of the plaintiff's employment (pl. dep. 1 at 93-94; Levy decl. ¶¶ 7, 8).

The plaintiff also claims that at the beginning of her employment, Mr. Justice asked her, "How does it feel to be on this plantation down here" (pl. dep. 1 at 82-83). When asked to explain her understanding of Mr. Justice's remark, the plaintiff asserted that the comment meant Caucasians worked in the office and the African-American employees worked on the plant floor (pl. dep. 1 at 82-83). The plaintiff, as Human Resources Manager, worked in the office and not on the plant floor. This statement was isolated, made by a nondecisionmaker, and unrelated to the decision to terminate her employment. The plaintiff

10

admits the statement was made at the beginning of her employment and was not temporally close to her termination (pl. dep. 1 at 82-83).

As argued by the defendant, not every comment about an employee's race, gender, religion, or age is direct evidence of discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring). Stray remarks, including "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" are not direct evidence. *Id.* Stray remarks may be evidence of discrimination, but only where there is some nexus between the remark itself and the adverse employment decision. *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548-49 (4th Cir. 1995) ("[I]solated and ambiguous statements…are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination."), *rev'd on other grounds*, 517 U.S. 308 (1996). "'Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination].'" *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (quoting *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991)). For example, in *O'Connor*, a supervisor's remarks that, "[I]t's about time we get some young blood in this company," and "[Y]ou are too damn old for this kind of work," were insufficient evidence of discrimination because the remarks were not made in the context of replacing the plaintiff, but were made in another or an unknown context. 56 F.3d at 548-50. Here, the alleged comments were not made in the context of the plaintiff's termination and were not made by the decisionmakers in the termination of her employment. Accordingly, the plaintiff has no direct evidence of discrimination.

"Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, No. 09-

11

1582, 2010 WL 4486748, at *2 (4th Cir. November 10, 2010) (slip copy) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir.2004)).

The plaintiff cannot meet the second and fourth elements. First, she cannot show that she was performing satisfactorily at her job. The plaintiff has conducted no discovery and has only her own testimony upon which to rely. "Whether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [the plaintiff's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." *Morrall v. Gates*, No. 09-1277, 2010 WL 1006912, at *1 (4th Cir. March 19, 2010) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir.2003)). The plaintiff admits that she prepared a document with comments about her own performance and considered her performance "on par" based on conversations with Mr. Adams, Ms. Levy, and Mr. Krabbenhoeft (pl. dep. 1 at 92-93; pl. dep. 2 at 83, 85-86, 90-100, ex. 4). She admits her beliefs were subjective (pl. dep. 2 at 98-99). However, the comments of others upon which she claims to have based her assumption of "on par" performance are not positive, but non-committal, such as "…hang in there. You'll do good. We're here to make sure that you succeed, to give you all the tools that you need. Let us know if you have any questions" (pl. dep. 1 at 92-93). The plaintiff has only her own subjective opinion to support her claim that she was performing her job at a level that met the defendant's legitimate expectations, while the defendant has documented specific examples of her poor performance (pl. dep. 2 at 98-99, ex. 5-10; Levy decl. ¶ 8).

With regard to the fourth element, the plaintiff names several individuals whom she claims are comparators who were treated better than she. Although the plaintiff claims her predecessor, Kevin Lawson, who is white/Caucasian, received more severance, she admits that she knows nothing about Mr. Lawson's employment, including how long he worked for the defendant (pl. dep. 2 at 135-136). Moreover, the plaintiff admits that she was offered severance, but refused the offer (pl. dep. 2 at 139). The plaintiff claims Mr.

12

Lawson's predecessor was transferred, rather than terminated, for poor performance, but does not know his name, race, or any details about his employment (pl. dep. 2 at 136-37). The plaintiff claims Lori Morgan was not terminated despite her poor performance, but Ms. Morgan, a Logistics/Materials Manager, was not a Human Resources Manager and, therefore is not a proper comparator (pl. dep. 2 at 139-40). The plaintiff claims there were complaints about Mike Fife's performance, but admits that she supervised Mr. Fife at times and he was below her in authority (pl. dep. 2 at 140-41). The plaintiff even claims Mr. Krabbenhoeft was a comparator, though as General Manager, he was the top person at the defendant's Spartanburg facility (pl. dep. 2 at 141-42).

"[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). As argued by the defendant, none of these individuals are proper comparators. Mr. Lawson was not treated any better than the plaintiff, who was also offered severance and refused it (pl. dep. 2 at 139). The plaintiff cannot even identify Mr. Lawson's predecessor by name or race (pl. dep. 2 at 136-37). The other individuals the plaintiff identified were in different positions than the plaintiff, reported to different supervisors, and had different duties (pl. dep. 2 at 139-42; Levy decl. ¶ 11). Based upon the foregoing, the plaintiff cannot show any inference of discrimination through comparators.

"The question confronting a judge faced with determining whether a *prima facie* case under Title VII has been made is whether the record as a whole gives rise to a reasonable inference of racially discriminatory conduct by the employer." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir.1993). The plaintiff cannot make such a showing. Ms. Levy, who is of the same race as the plaintiff, hired the plaintiff and knew the plaintiff's

race at the time she was hired to replace a white Human Resources Manager, Mr. Lawson. Because Ms. Levy was also the person who decided to terminate the plaintiff's employment, there is an inference that race is not a factor. *See Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991) ("[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing."); *see Jiminez v. Mary Washington College*, 57 F.3d 369, 378 (4th Cir. 1995). As argued by the defendant, this inference is particularly strong where Ms. Levy is of the same race as the plaintiff.

Furthermore, the plaintiff concedes that she does not know what factors the defendant considered in deciding to terminate her employment or the weight those factors were given (pl. dep. 1 at 93-94). The plaintiff presents no evidence giving rise to an inference of unlawful discrimination. In fact, the plaintiff admits that she does not know why she was terminated and does not know if the plaintiff discriminated on the basis of race (pl. dep. 1 at 93-94, 96). Based upon the foregoing, the plaintiff cannot establish the elements of a *prima facie* case.

Under the burden-shifting method of proof of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), if the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) (this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

Here, even assuming the plaintiff could establish a *prima facie* case of discrimination, which she cannot, the defendant has articulated a legitimate, nondiscriminatory reason for terminating the plaintiff's employment: the plaintiff performed poorly in her job (Levy decl. ¶ 8). Accordingly, the plaintiff must show the given reason was pretext for discrimination. "The ultimate question in every employment discrimination case

14

involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153 ("The protected trait must have actually played a role in the employer's decision-making process and had an influence on the outcome.").

The plaintiff admitted that she does not know the factors considered by the defendant in terminating her employment, what weight those factors were given, or even who made the decision to terminate her employment (pl. dep. 1 at 93-94). She has failed to make any attempt to provide evidence of her claims, as she has taken no depositions and served no written discovery. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (plaintiff cannot show pretext merely by asserting "personal belief"). Unsubstantiated allegations and bald assertions fail to show discrimination. *Evans v. Technologies Apps. & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). It is the perception of the decisionmaker which is relevant, not the plaintiff's self assessment of her performance. *Id.*

The plaintiff argues that the above-discussed remarks by management are evidence that the defendant's stated reason for terminating her employment is pretext for discrimination (pl. resp. m.s.j. at 14). However, their value as evidence in this regard is measured by when and how they were made:

> A court may also consider stray comments that provide circumstantial evidence of discriminatory animus, in combination with other evidence. *See Warren v. Fort Lincoln Cemetery, Inc.*, No. 00-419, 2001 WL 743199 (D. Md. June 26, 2001) (holding though employer's racial slurs were not direct evidence of discriminatory intent, the employer's "conduct may still support Plaintiff's case as circumstantial evidence of discriminatory animus" by employer). The Court may weigh these stray comments in deciding whether a discriminatory animus is the most likely explanation for a plaintiff's termination. *See Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir.2001) ("[T]hough such 'stray remarks' may be material to the pretext inquiry, 'their probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision, or ... were not related to the employment decision in question, or were made by nondecisionmakers.' ").

*Huang v. Gutierrez*, C.A. No. AW-08-2882, 2010 WL 93274, at *10 (D. Md. January 5, 2010) (slip copy). Here, the remarks alleged by the plaintiff are "too generalized and removed from the employment decision to support a finding of pretext in her [race] discrimination claim, without other supporting evidence." *Id.* at *11. Here, the plaintiff has no evidence to refute the defendant's business judgment, through Ms. Levy, who is of the same race as the plaintiff, that the plaintiff was performing poorly. When the plaintiff sought evaluations from management, Mr. Krabbenhoeft, Mr. Justice, Mr. Adams, and Mr. Dawdy all agreed with Ms. Levy's later assessment that the plaintiff's performance was unsatisfactory (pl. dep. 2 at 87-88, 100-122, ex. 5-10). That the plaintiff disagrees with the low opinions of her performance held by every employee of the defendant who ever gave one is not evidence of pretext. Based upon the foregoing, the plaintiff's race discrimination claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 45) be granted. It is further recommended that the defendant's motion to strike the plaintiff's affidavit (doc. 53) be granted in part as set forth above. Should the District Court adopt this court's recommendation, the defendant's motion to strike the plaintiff's sur-reply (doc. 58) should be denied as moot. Alternatively, it is recommended that the motion to strike (doc. 58) be granted as the sur-reply is untimely.

s/Kevin F. McDonald
United States Magistrate Judge

November 29, 2010

Greenville, South Carolina